IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION

| | | |
|---|---|---|
| Kelvin Hayes and Karen Skipper, | ) | Civil Action No.  2:13-0816-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Tim Knight and Keith Hunt, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action has been filed by the Plaintiffs pursuant to 42 U.S.C. § 1983.  Plaintiffs allege that the Defendants, both Dorchester County Sheriff's Deputies, violated their constitutional rights during a traffic stop that occurred on March 27, 2011.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on June 30, 2014.  After receiving an extension of time to reply, Plaintiffs filed a memorandum in opposition to the Defendants' motion on July 21, 2014, following which the Defendants filed a reply memorandum on July 31, 2014.

Defendants' motion is now before the Court for disposition.[1]

_____

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), D.S.C.  The Defendants have filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



1

## Background and Evidence[2]

The evidence submitted to the Court shows that in the early morning hours of March 27, 2011, Plaintiff Kelvin Hayes was driving a van in which Plaintiff Karen Skipper was a passenger, when the van was pulled over by the Defendant Deputy Knight. Knight testified that he pulled Hayes over because he had committed a traffic violation by not turning his right turn signal on more than one hundred feet prior to turning. Knight Deposition, pp. 19-22. The dash cam video from Knight's patrol car shows Hayes turning on his right blinker, which then blinked approximately eight times as the vehicle was moving and eventually pulled up to a stop sign. The video shows the car came to a complete stop at the stop sign, and then turned right. See Exhibit (video of incident). The van then proceeded down the road and made a left turn onto another road before being pulled over by Knight. Once the vehicles were stopped, Knight approached the passenger side of the van and asked both Hayes and Skipper for identification. Knight Deposition, pp. 27-28. Knight testified that he usually asks for identification from all occupants of a stopped vehicle so that he can check to make sure there are no outstanding warrants for any occupants. Id. Knight then asked Hayes to step out of the vehicle and walk to the rear of the van to where his patrol car was. The video shows Hayes getting out of the car and walking to the back of the van.

Knight told Hayes that the reason he had pulled him over was that he had failed to activate his right turn signal more than the required one hundred feet from the intersection. Plaintiff apologized, to which Knight responded "no big deal". See Video, at 1:25:35. Knight then proceeded to ask Hayes a series of questions about where he had been, where he was going, and what the

---

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

2



relationship was between Hayes and Skipper.  Hayes reported that he and Skipper had been friends for around five years.  Knight then asked Hayes if there were any illegal drugs or weapons in the car, to which Hayes said "no" and that Knight could "check for himself" if he wanted to.  See Video, at 1:27:51.  Knight also asked Hayes if he had any weapons on him, and Hayes told him he had a small pocket knife, which he voluntarily handed over to Knight.  See Video, at 1:27:47.  Knight then asked Hayes to remain at the back of the van while he went to speak with Skipper.  Knight testified at his deposition that he wanted to understand the relationship between the two, where they were going, and where they had been.  Knight Deposition, p. 42; see also Skipper Deposition, p. 40.  Skipper confirmed that there was not anything illegal inside the van.  Video, at 1:28:28 through 1:28:33.  Although Knight testified that both Hayes and Skipper were cooperative, he also testified that Hayes was "very nervous" in his "body language", and that he noticed that Hayes' arms and hands were shaking when he was handing Knight information.  Knight Deposition, pp. 30-31.  However, he further conceded that everybody that gets stopped by law enforcement has a level of nervousness. Id., p. 32.  There is no visible "shaking" by Hayes on the video.  See Exhibit (Video).

When Knight returned to the back of the van after speaking with Skipper, he asked Hayes if he would consent to a search of his person, to which Hayes responded by asking if Knight was going to issue him a ticket.  When Knight said he had not decided yet, Hayes responded that unless he was going to be issued a ticket, he did not understand why he needed to be searched. Knight Deposition, p. 55; Video, at 1:29:07-17.  Knight then asked Hayes if had put a mint in his mouth, and when Hayes said yes, Knight asked to see it.  Plaintiff showed him the mint.  Knight Deposition, pp. 56-67.  Knight conceded at his deposition that he did not have the authority at that point to search inside Plaintiff's mouth, but also testified that, in his opinion, he had more than



enough reasonable suspicion at that point that there was criminal activity going on.  Id., p. 58.

Although the basis for that belief is not apparent on the video, Knight testified at his deposition that

he saw what appeared to him to be a piece of clear plastic baggie in Hayes' mouth, although he never

appears to tell Hayes this on the video.  Knight Deposition, pp. 66-67.  After Hayes showed Knight

the mint, Knight directed Plaintiff to open his mouth so he could inspect it, at which time Hayes again

said that if Knight was not going to give him a ticket he did not know why Knight needed to search

him.  Video, at 1:29:29 - 1:29:38.  Knight then grabbed the front of Hayes' shirt/jacket in the lapel

area and told Hayes he would "choke him out" if he did not take something out of his mouth.  Knight

conceded that Plaintiff had not at that time made any aggressive move towards him whatsoever, but

testified that he was concerned because Hayes was not spitting out what he believed to be contraband

in his mouth.  Knight Deposition, pp. 64-66.  The two men then struggled off camera out of view of

the video.  Although the sounds of the struggle can be heard, Hayes testified that he did not resist nor

strike Knight during this time.  Hayes further testified that he only weighed approximately 140

pounds, while Knight weighed approximately 270.  Hayes Deposition, pp. 63-64.

It was at this time that the Defendant Deputy Hunt arrived on the scene as backup.

Knight states in his incident report that although Plaintiff was on his back at one point, Plaintiff tried

several times to get up and to use his hands to free himself, and that he [Knight] struck Plaintiff twice

in the face because he had no other way to stop him from actively resisting.  Knight's incident report

further reflects that the officers were then able to roll Plaintiff over and place him in handcuffs.

Defendant's Exhibit A (Incident Report).  Hunt's incident report indicates that when he arrived he

heard a sound like scuffling going on, and that when he ran over to Knight's vehicle he observed

Knight and Hayes on the ground, that Hayes was actively resisting and refusing to put his hands



behind his back, and that Knight struck Hayes twice in the head area before they were finally able to get him into handcuffs.  See Plaintiff's Exhibit 4 (Court Docket No. 74), pp. 6-7.  See also Knight Deposition, p. 77.

After Plaintiff has been handcuffed, he can be seen in the video with blood covering his forehead.  See Video, 1:1:34:56 - 1:35:35.  There is also blood on Hunt's face in the photograph exhibit; however, this blood is apparently Plaintiff's blood from when his head hit Hunt in the mouth, although it might possibly have also come from a cut lip.  Defendant's Exhibit B [photograph]; see also Hunt Deposition, pp. 32-33, 45; Video, at 1:43:46; Plaintiff's Exhibit 7 (Court Docket No. 73, p. 3).  EMS was called to the scene, but Plaintiff refused treatment.  Knight told Hayes he was going to be charged with felony assault on an officer, and also questioned Plaintiff about what he had "had in his mouth".  Hayes told Knight that he had never "laid a hand on you", and that he did not have anything in his mouth.  Video, at 1:37:07, 1:39:25.  Hunt then transported Hayes to the hospital, while Skipper was provided a ride home by another Dorchester County Deputy.  Hayes Deposition, p. 72; Skipper Deposition, pp. 41-42.  Knight and a Sergeant finished up paperwork and inventoried of the car at the scene, during which Knight testified a small copper pipe/bowl was found in the van in plain view.  However, although Knight testified that this item was booked into evidence, it was never subjected to any testing.[3]  Knight Deposition, pp. 104, 106-107.  Both Hayes and Skipper deny there was any pipe in the car, and it is never seen on the video, there were no photographs taken, and it has never been produced.  Hayes Deposition, pp. 86-89; Skipper Deposition, p. 49; Knight Deposition, pp. 104-108.

---

[3]Knight testified that although Officer Scott Parker stated that the alleged brass pipe was in Plaintiff's possession when he was booked into jail, that was not correct.  Knight Deposition, p. 117.



Once at the hospital, Hayes stated that he did not need, nor did he want, any medical attention. However, Hunt insisted that Hayes' blood be drawn to test for HIV/HEP, and that x-rays be taken of Plaintiff's abdomen. Plaintiff was found to have multiple puncture wounds, mild swelling and small abrasions to the left side of his head, and after receiving an x-ray, CT scan and an EKG, he was discharged with a diagnosis of a closed head injury. The hospital tests did not reveal any evidence of infectious diseases, nor did they find that Plaintiff had any foreign substances in his abdomen. See Plaintiff's Exhibit 7 [Medical Records]. Hayes was then transported to the Detention Center, where he was released the following day. Plaintiff was charged with failure to give a proper signal, resisting arrest, and possession of paraphernalia; however, Plaintiffs assert that the solicitor subsequently dropped all charges against Hayes after reviewing the video of the incident. See Complaint, ¶¶ 31-33.

In their Amended Complaint, Plaintiffs Hayes and Skipper assert a claim against Defendant Knight for unlawfully seizing them without probable cause in violation of the Fourth Amendment (**First Cause of Action**). Plaintiff Hayes also asserts a claim of excessive force against both Defendants Knight and Hunt in violation of his Fourth Amendment rights (**Second Cause of Action**), asserts a claim against Defendant Knight for arresting him on the charges of resisting arrest and improper turn without probable cause in violation of the Fourth Amendment (**Third Cause of Action**), and asserts a claim against the Defendant Knight for arresting him on the charges of resisting arrest and improper turn without probable cause in violation of his First Amendment rights (**Fourth Cause of Action**).



## Discussion

As noted, the Defendants have moved for summary judgment on all claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

### I.

### (First Cause of Action)

In their First Cause of Action, both Plaintiffs complain that they were illegally "seized" by Knight without probable cause in violation of their Fourth Amendment Rights.[4] The Fourth Amendment commands that seizures be reasonable; Wilson v. Arkansas, 514 U.S. 927, 931 (1995); and "[w]hen a police officer stops an automobile and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment". United States v. DiGiovanni, 650 F.3d 498, 506 (4th Cir. 2011), citing Whren v. United States, 517 U.S. 806, 809-810 (1996). Therefore "[a]n automobile stop is . . . subject [to] the constitutional imperative that it not be 'unreasonable' under the circumstance". Whren, 517 U.S. at 810.

---

[4]This is a separate claim from Plaintiff Hayes' assertion in the Third Cause of Action of the Complaint that he was "arrested" without probable cause. See Discussion, Section III, infra.

7



"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred". Id. "Probable cause exists if, given the totality of the circumstances, the officer 'had reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense'". United States v. Sowards, 690 F.3d 583, 588 (4th Cir. 2012), citing Beck v. Ohio, 379 U.S. 89, 91 (1964); see also Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998). Therefore, to survive summary judgment on this claim, Plaintiffs must have evidence sufficient to give rise to a genuine issue of fact as to whether, given the totality of the circumstances, Deputy Knight did not have "reasonably trustworthy information" sufficient to support a prudent person's belief that Hayes had committed a traffic violation. Sowards, 690 F.3d at 588.

Defendants argue that Knight had sufficiently reasonable information to make the traffic stop because he personally observed Hayes failing to properly signal his turn prior to one hundred feet before the turn, a violation of state statute.[5] While it is clear from the video of the incident that Hayes did turn on his right blinker when pulling up to the stop sign to make a right turn, Knight testified that Hayes "violated state law by not using his turn signal at least a minimum of one

---

[5]S.C. Code Ann. § 56-5-2150 reads a follows:

Turning movements and required signals.

(a)     No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal as provided for in this section.

(b)     A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

8



hundred feet before making his turn". Knight Deposition, p. 22. Plaintiffs argue, however, that there is a genuine issue of fact as to whether Knight had probable cause that Hayes had committed a traffic violation, and considering the evidence presented in the light most favorable to the Plaintiffs, the undersigned is constrained to agree.

In support of their claim, Plaintiffs have submitted a report from an investigator using landmarks from the roadway in question which indicates Hayes began signaling one hundred seventeen (117) feet prior to the stop sign, well in excess of the distance required by statute. See Plaintiff's Exhibit 6 [Minter Report and Photographs]. Indeed, that issue is not even in dispute, as Knight concedes in his reply memorandum for purposes of summary judgment that Hayes turned his right blinker on one hundred seventeen feet before the stop sign. See Defendants' Reply Memorandum, p. 2. Nonetheless, Defendants argue that Knight was completely justified in stopping Hayes because deputies cannot be "expected to stop, retrieve a tape measure, and determine the exact distance for a traffic stop such as this", and note that Knight's estimation was only seventeen feet off. However, in Sowards the Fourth Circuit panel held that the reasonableness of an officer's visual estimate depends on whether the vehicle's violation of a traffic law "is estimated to be in significant excess or slight excess" of the applicable limit;[6] Sowards, 690 F.3d at 591; and pursuant to this holding, Knight's unsupported estimation of how far Hayes' van was from the intersection, based on the facts and evidence before the Court, is not sufficient to find as a matter of law that Knight had probable cause to pull Hayes over.

As applied to the facts of this case, Sowards held that if there is a significant deviation;

---

[6]At his deposition, when Knight was asked how he determined how far one hundred feet was, he stated "I estimated it". Knight Deposition, p. 22.



if, for example, Hayes was well within one hundred feet of the approach to the stop sign such that an unaided visual determination of a violation would be reasonable given the totality of the circumstances, then probable cause based solely on the officer's visual estimate would exist. Sowards, 690 F.3d at 588, 591-592. However, if there is only a slight deviation (such as here, where Defendants argue in their brief that Knight was only 17 feet off in his calculation), then additional indicia of reliability are necessary to support the reasonableness of the officer's visual estimate. Id., at 591. Defendants have provided no other evidence to establish the reliability of Knight's estimate, which for purposes of summary judgment turned out not only to be wrong, but manifestly so.[7] The evidence before the Court shows that Hayes turned his blinker on seventeen feet *before* the legal setback limit of one hundred feet, and the disparity in the evidence between when Hayes actually turned his blinker on and Knight's testimony presents a genuine issue of fact as to whether Knight possessed "reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that [Hayes] had committed" the violation for which he was cited. Beck, 379 U.S. at 91; see also Sowards, 590 F.3d at 594 [Finding summary judgment for the Defendant was not appropriate where the officer's estimate "was in fact a guess that was merely conclusory, without an appropriate factual foundation," and therefore not "an objectively reasonable basis for probable cause to initiate a traffic stop"]; see Brinegar v. United States, 338 U.S. 160, 175-176 (1949) ["probable cause [requires] a reasonable ground for belief of guilt . . . to allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice"]. Therefore, Knight is not entitled to summary

---

[7]On the video Knight tells Hayes that the reason Knight pulled him over was because he was only about twenty feet from the turn when he activated his turn signal, although Defendants now concede for purposes of their motion that Hayes actually activated his turn signal around 117 feet from the turn. See Video, at 1:25:30.

10



judgment on Hayes' claim that he was "seized" as a result of this traffic stop without probable cause in violation of his Fourth Amendment rights.

As for Skipper, passengers have standing to challenge a pretextural traffic stop. Skipper was a passenger in the car, was questioned, and even instructed to get out of the car and come to the back of the vehicle.    Applicable case law holds that a passenger is "seized" during a traffic stop; see Brendlin v. California, 551 U.S. 294, 251 (2007); and "if police lack[ ] reasonable suspicion to stop the car, then the passenger is seized unreasonably, thus violating personal Fourth Amendment rights". United States v. Davis, 750 F.3d 1186, 1191 (10th Cir. 2014); see also United States v. Ervin, 875 F.2d 268, 270 (10th Cir. 1989) ["Drivers and passengers have similar interests in seeing that their persons remain free from unreasonable seizure"].  Therefore, as a genuine issue of fact exists as to whether Knight had probable cause to pull the van over for the traffic violation alleged, this Defendant is also not entitled to summary judgment with respect to Skipper's claim that she was unlawfully "seized" in violation of her Fourth Amendment rights.

## II.

### (Second Cause of Action)

In the Second Cause of Action of the Complaint, Plaintiff Hayes asserts a claim against both Knight and Hunt for using excessive force while seizing him in violation of his Fourth Amendment Rights.  As Sheriff's deputies, each of these Defendants is a "state actor" for purposes of a Fourth Amendment § 1983 claim, and is subject to damages in their individual capacity.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other seizure of a person.  Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir.



1997), citing <u>Graham v. Conner</u>, 490 U.S. 386, 388 (1989).  Fourth Amendment claims of excessive

use of force during an arrest are considered under an "objective reasonableness" standard.  <u>Henry v.</u>

<u>Purnell</u>, 652 F.3d 524, 531 (4th Cir. 2011); <u>Culosi v. Bullock</u>, 596 F.3d 195, 201 (4th Cir. 2010);

<u>Orem v. Rephann</u>, 523 F.3d 442, 446 (4th Cir. 2008); <u>Smith v. Kendall</u>, No. 09-6452, 2010 WL

764051 (4th Cir. Mar. 8, 2010).  This test requires "balanc[ing] the nature and quality of the intrusion

on the individual's Fourth Amendment interests against the importance of the governmental interests

alleged to justify the intrusion." <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985); <u>Abney v. Coe</u>, 493 F.3d

412, 415 (4th Cir. 2007); <u>White v. Town of Chapel Hill</u>, 899 F.Supp. 1428, 1435 (M.D.N.C. 1995),

<u>aff'd</u>, 70 F.3d 1264 (4th Cir. 1995); <u>Sweatt v. State of Maryland</u>, No. 89-3231, 1989 WL 126582 at

**1 (4th Cir. 1989).  What is objectively reasonable depends on what conditions exist at the time the

alleged excessive force is used, recognizing that police officers are often forced to make split  second

judgments in circumstances that are tense, uncertain, and rapidly evolving.  <u>Graham v. Connor</u>, 490

U.S. at 396; <u>Waterman v. Batton</u>, 393 F.3d 471, 476-477 (4th Cir. 2005); <u>see</u> <u>Greenidge v. Ruffin</u>,

927 F.2d 789 (4th Cir. 1991).

When considering a police officer's actions under this "objective reasonableness"

standard, the Court must consider the circumstances of the particular case, including the severity of

the crime committed, whether the subject posed an immediate threat to the safety of the police

officers or others, and whether the subject was actively resisting arrest or attempting to evade arrest.

<u>Graham</u>, 490 U.S. at 396; <u>see</u> <u>Foote v. Dunagan</u>, 33 F.3d 445, 447-448 (4th Cir. 1994); <u>Martin v.</u>

<u>Gentile</u>, 849 F.2d 863, 869 (4th Cir. 1988); <u>Waller v. City of Danville</u>, 212 Fed. Appx. 162, 169 (4th

Cir. 2006).  Considering the evidence in the light most favorable to the Plaintiff, the undersigned does

not find that the Defendant Knight is entitled to summary judgment on this claim pursuant to this



standard.  A review of the video of the incident at issue, as well as Knight's own testimony, confirms

that prior to Knight's use of force, Hayes had been cooperative during the traffic stop and was not

acting in a threatening manner.  Further, Knight testified in his deposition that he had no legal

authority to search Hayes' mouth.  Knight Deposition, pp. 58, 63.  Nonetheless, as can clearly be seen

on the video, Knight suddenly grabbed Hayes by the collar at the base of his neck, shook him, and

threatened to "choke him out", thereby initiating the brief struggle between the two men which occurs

off camera.

Hence, considered in the light most favorable to the Plaintiff, the evidence shows that

Hayes did not pose an immediate threat to Knight's safety at that time, nor was he actively resisting

arrest or attempting to evade arrest.  Hayes had not been charged with a crime (Knight had even

indicated he might only give him a warning ticket for the purported traffic violation), and although

Knight testified that he took the action he did because he believed he saw what appeared to be a

baggie of suspected drugs in Hayes mouth, there is no evidence whatsoever that Hayes ever had

anything in his mouth (other than a mint) or swallowed some foreign substance to prevent Knight

from obtaining it.  Knight also admits that during his struggle with Hayes, he struck him at least two

times in order to get him to stop struggling, while Hayes testified that he never struck Knight.[8]

Knight Deposition, pp. 76, 80-81, 85; Hayes Deposition, p. 63.  Skipper also testified that she could

see Plaintiff on the ground and Officer Knight's arm going up and down.  Skipper Deposition, p. 35.

Considered in the light most favorable to the Plaintiffs, this evidence presents a genuine issue of fact

as to whether Knight's actions were objectively reasonable under the circumstances of this particular

_____

[8]Defendants argue in their brief that at the initiation of the struggle, Hayes can be seen "taking a swing at Deputy Knight."  Defendants' Brief, p. 5, citing to the Video, at 1:1:29:47-1:29:50. However, that allegation is not readily confirmed by watching the video.



case. <u>Graham</u>, 490 U.S. at 396; <u>cf</u>. <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985) [Fourth Amendment requires an analysis which balances the nature and quality of the intrusion against the governmental interest alleged to justify the intrusion]; <u>Rowland v Perry</u>, 41 F.3d 167, 174 (4th Cir. 1994) [Summary judgment not appropriate where Plaintiff maintained he only resisted to the extent of instinctively trying to protect himself from the Defendant's onslaught, and evidence was such that a juror could find that no reasonable officer could have believed his conduct to be lawful in light of the circumstances]; <u>Gilyard v. Benson</u>, ___ Fed. Appx. ___, 2014 WL 4801465 at * 1 (4th Cir. Sept. 29, 2014) [Applying objective reasonableness standard]; <u>Boone v. Stallings</u>, ___ Fed. Appx. ___, 2014 WL 4457253 at * 2 (4th Cir. Sept. 11, 2014).[9]  Therefore, Knight is not entitled to summary judgment on this claim.

However, the evidence is not sufficient to maintain an excessive force claim against Deputy Hunt.  The evidence presented to this Court clearly shows that Hunt did not arrive on the scene until Hayes and Knight were already involved in a physical struggle.  Plaintiffs have presented no evidence to show that Hunt was aware of anything that had transpired between Knight and Hayes prior to arriving on the scene, when he was confronted with a fellow police officer struggling in a physical confrontation with the subject of a traffic stop.  The evidence further shows that Hunt's only activity at that point was to assist Knight in restraining the individual with whom he was struggling, and that as soon as Plaintiff was placed in handcuffs the physical confrontation ceased.  <u>Hunt</u>

---

[9]One additional argument Defendants make for dismissal of this claim is that Hayes does not claim any serious or permanent injury as a result of this altercation.  However, a lack of significant injury is not, by itself, a sufficient ground for dismissal of a Fourth Amendment excessive force claim.  <u>Cf</u>. <u>Saunders v. Duke</u>, 766 F.3d 1262, 1270 (11th Cir. 2014) [A plaintiff claiming excessive force under the Fourth Amendment can seek nominal damages even if he does not have compensable injuries]; <u>cf</u>. <u>Taylor v. Dormire</u>, 690 F.3d 898, 900 (8th Cir. 2012) [Discussing nominal damages in an excessive force claim].



<u>Deposition</u>, pp. 33-34.  There is no evidence to show, nor is it even alleged, that Hunt ever struck the Plaintiff during this brief struggle, with the only blow being struck apparently Plaintiff hitting Hunt in the face with his head or Hunt otherwise somehow incurring a cut lip.  No excessive amount of force by Hunt is shown, and there is nothing objectively unreasonable about Hunt's conduct under a Fourth Amendment analysis.  Upon his coming on the scene, the severity of the conduct was manifest as there was an ongoing struggle between a sheriff's deputy and suspect, and it was certainly reasonable for Hunt to perceive that Hayes posed an immediate threat to the safety of Deputy Knight and that Hayes was actively resisting arrest or attempting to evade arrest under these circumstances. <u>Graham</u>, 490 U.S. at 396 ["The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"].

     Finally, Hayes argues in the alternative that Hunt should still be held liable on this claim under the theory of bystander liability.  A law enforcement officer who is otherwise a bystander may be held liable for an act of excessive force where they are confronted with a fellow officer's illegal act and possess the power to prevent it but fail to do so.  <u>Randall v. Prince George's County, MD.</u>, 302 F.3d 188, 203 (4th Cir. 2002); <u>see</u> <u>also</u> <u>O'Neill v. Krzeminski</u>, 839 F.2d 9, 11-12 (2nd Cir. 1988)[observing that officer who stands by and does not seek to assist the victim could be "tacit collaborator"].  Here, however, for the reasons already discussed hereinabove, there is not sufficient evidence to create a genuine issue of fact of an illegal act by Hunt, as there is no evidence to support an inference that, upon his arrival on the scene, Hunt was confronted with what would have appeared to him to be a fellow officer's illegal act.  In any event, under the facts presented, Hunt would also be entitled to qualified immunity from liability.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)[Qualified immunity shields public officials "from liability from civil damages insofar as



[their] conduct [does] not violate clearly establish statutory or constitutional rights of which a reasonable person would have known"] (quoting <u>Harlow v. Fitzgterald</u>, 457 U.S. 800, 818 (1982).[10] Hunt should therefore be granted summary judgment on this claim.

### III.

### (Third Cause of Action)

In his Third Cause of Action, Plaintiff Hayes alleges that Deputy Knight violated his Fourth Amendment rights by charging him with resisting arrest and improper turn without probable cause.

For the reasons already discussed, <u>supra</u>, Deputy Knight is not entitled to summary judgment on Hayes' claim of lack of probable cause for the charge of improper turn.  <u>Sowards</u>, 690 F.3d at 588, 591 [Fourth Amendment does not allow blanket approval for the proposition that an officer's visual estimate will suffice as a basis for probable cause to initiate a traffic stop; rather, the reasonableness of an officer's visual estimate must be assessed in the totality of the circumstances to determine whether the officer "had reasonably trustworthy information . . . sufficient to warrant a prudent [officer] in believing that the [subject] had committed or was committing an offense"].

As for the charge of resisting arrest ,the video reflects that Plaintiff was not under arrest when Knight initiated the physical confrontation between the two parties.  While Knight

---

[10]Defendant Knight also asserts entitlement to qualified immunity in this case.  However, that a police officer cannot arrest a Plaintiff without probable cause and cannot use excessive force against a person were both clearly established at the time of the incidents in question.  <u>Turmon v. Jordon</u>, 405 F.3d 202, 208 (4th Cir. 2005) [Noting well established Fourth Amendment right to be free from excessive force during a seizure]; <u>Porterfield</u>, 156 F.3d at 569 [Noting well established rule of objective reliability for establishing probable cause]; <u>see Vathekan v. Prince George County</u>, 154 F.3d 173, 178 (4th Cir. 1998) [summary judgment on qualified immunity grounds improper where there is a material factual dispute regarding the conduct of the Defendant].  Therefore, Knight is not entitled to qualified immunity on the claims asserts against him.



testified that he took the action he did because he believed Plaintiff might have had a baggie of drugs in his mouth, there has been no evidence whatsoever presented to show that Hayes ever in fact had anything in his mouth or swallowed any foreign substance to prevent Knight from retrieving it. In any event, the issue for this claim is not whether Knight believed Hayes was in the possession of contraband, the issue is whether Knight was attempting to place Hayes under arrest, which Hayes then resisted. State v. Brannon, 697 S.E. 2d 593, 597 (S.C. 2010) [Discussing that whether officer had probable cause to arrest person was immaterial to analysis . . . rather, focus is on whether an arrest was being made]. There is no evidence that an arrest was being made. To the contrary, Knight had just told Hayes that he had not decided whether to even give him a traffic ticket. Knight then asked Plaintiff to open his mouth so he could look in it, and when Hayes demurred, he suddenly grabbed Hayes by the collar and threatened to "choke him out".[11] Knight Deposition, pp. 64-66.

In light of this testimony and evidence, there is a genuine issue of fact as to whether Knight had probable cause to charge Hayes with resisting arrest, as it is not apparent that an arrest was being made when Knight initially grabbed Plaintiff by the collar. See Brannon, 697 S.E.2d at 597 [noting that an arrest is a material element of the crime of resisting arrest]; cf. Rowland, 41 F.3d at 173-174 [Summary judgment not appropriate where Plaintiff maintained he only resisted to the extent of instinctively trying to protect himself from the Defendant's onslaught, and evidence was such that a juror could find that no reasonable officer could have believed his conduct to be lawful in light of the circumstances]; Muhammed v. Klotz, 36 F.Supp. 2d 240, 243 (E.D.Pa. 1999)["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is

---

[11]Although Knight testified at his deposition that he did not intend to "choke Plaintiff out", that is not what is represented on the video. Knight Deposition, pp. 65-66.



a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law!'], citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 247, 250-252 (1986).  Therefore, Knight is not entitled to summary judgment on this claim.  <u>Wong Sun v. United States</u>, 371 U.S. 471, 479 (1963) ["The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirement of probable cause would leave law-abiding citizens at the mercy of the officers' whim or caprice"] (internal quotations omitted].

## IV.

### (Fourth Cause of Action)

In the Fourth Cause of Action of the Complaint, Plaintiff Hayes alleges that the Defendant Knight violated his First Amendment right to be free from unreasonable seizures when Knight arrested Hayes for improper turn and resisting arrest without probable cause.  Specifically, Hayes alleges that Knight was motivated to arrest him because he exercised his rights under the First Amendment by questioning the authority of Knight to search his person and his mouth.

The First Amendment provides that Congress shall make no law abridging the freedom of speech or the right of the people peaceably to assemble and to petition the government for a redress of grievances.  The rights guaranteed by the First Amendment apply against the states and local governmental entities through their incorporation into the due process clause of the Fourteenth Amendment.  <u>See</u>, e.g., <u>Gitlow v. People of New York</u>, 268 U.S. 652, 666 (1925); <u>Oliver v. United States</u>, 466 U.S. 170, 186 n.3 (1984);  <u>Elfbrandt v. Russell</u>, 384 U.S. 11, 18 (1966).  Therefore, as a sheriff's deputy, the Defendant Knight is subject to suit for damages in his individual capacity under § 1983 for any violation Hayes' First Amendment constitutional rights.  <u>Will</u>, 491 U.S. at 71; <u>Hafer</u>



18

v. Melo, 112 S.Ct. 358, 365 (1991); Goodman v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977).

As presented by the Plaintiff in his Fourth Cause of Action, his First Amendment claim is that he was subjected to an unreasonable seizure for questioning Knight's authority to search his person and mouth; i.e., that Knight assaulted and arrested him without probable cause in retaliation for Hayes engaging in constitutionally protected speech.  In their brief, Defendants "agree with the established law that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for his speech", but argue that Hayes has no First Amendment claim for retaliatory arrest because Deputy Knight's actions were supported by probable cause.  Defendants' Brief, p. 29.  Larosa v. City of Sweetwater, No. 13-21585, 2014 WL 4793001 at * 3 (S.D.Fla. Sept. 25, 2014) ["Absent probable cause the law is 'clearly established' that law enforcement officers may not retaliate against citizens for exercising their free speech rights."] (quoting Bennett v. Hendrix, 423 F.3d 1247, 1255-56 (11th Cir. 2005)); cf. Reichle v. Howards, 132 S.Ct. 2008, 2093 (2012) ["This Court has never recognized a First Amendment right to be free from retaliatory arrest that is supported by probable cause . . . ."].  However, as this is the only defense to this claim offered by the Defendants in their brief, and as the undersigned has already determined that a genuine issue of fact exists as to whether Knight had probable cause to arrest Hayes, Defendants' motion for summary judgment on this claim should be denied.

### Conclusion

Based on the foregoing, it is recommended that the Defendant Hunt's motion for summary judgment be g**ranted**, and that Hunt be dismissed as a party Defendant in this case.  In all other respects, the remaining Defendant Knight's motion for summary judgment should be **denied**



with respect to all of Plaintiff's claims.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 5, 2014
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

